Thomas D. Conroy v. Commissioner.
Conroy v. Commissioner
Docket No. 59858.
United States Tax Court
T.C. Memo 1958-6; 1958 Tax Ct. Memo LEXIS 228; 17 T.C.M. (CCH) 21; T.C.M. (RIA) 58006; January 22, 1958
David P. Brown, Jr., Esq., Western Saving Fund Building, Philadelphia, Pa., for the petitioner. A. Jesse Duke, Jr., Esq., for the *229 respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in income tax and an addition to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939, for the year 1952, in the respective amounts of $25,367 and $2,283.05. The issues for decision are as follows: (1) whether certain shares of stock issued to petitioner in 1952 as compensation had a determinable fair market value and, if so, what was that value; (2) whether certain payments for interest and taxes made by petitioner are properly deductible by him; (3) whether petitioner is entitled to claimed deductions of $1,345.25 as business and travel expenses; and (4) whether the Commissioner properly determined the addition to tax under section 294(d)(1)(A) for failure to file a 1952 Declaration of Estimated Tax. The settlement of other issues by agreement or concession will be reflected in a Rule 50 computation. Findings of Fact Some of the facts stipulated, are so found and the stipulated facts together with the pertinent exhibits are included herein by reference. Petitioner is a resident of Sayville, New York. His income tax return *230 for 1952 was filed with the director of internal revenue for the District of Lower Manhattan, New York. In 1952 and for many years prior thereto petitioner was engaged in the business of security brokerage, investment banker and financial advisor. In pursuit of his business petitioner rendered financial advice to executives of corporations in connection with recapitalization and the revision of capital structures. Petitioner rendered such services to Servomechanisms, Inc., a New York corporation. On December 20, 1951, Servomechanisms, Inc. sent the following letter to petitioner: "Dear Mr. Conroy: "We wish to confirm herewith our understanding with you relative to your compensation for financial services rendered by you to this Company. "(1) In consideration of your financial services heretofore rendered to us covering a period of approximately two and a half years, including introducing this Company to Van Alstyne Noel Corporation the representative of several underwriters we will give you 8000 shares of Common Stock. "(2) This stock will be delivered to you upon the completion of the deal for refinancing as set forth in the Purchase Contract between Servomechanisms, Inc. *231 , and Van Alstyne Noel Corporation and no part of such stock will be due or payable to you unless and until such deal, is completed. "(3) You have given us your assurance that you are taking these shares for investment and that you have no intention of publicly distributing the same. "If this is agreeable and satisfactory to you will you please signify your consent by signing the same. "Very truly yours, "SERVOMECHANISMS, INC.
"By /s/ Charles H. Rodgers Treasurer Servomechanisms, Inc. "Approved and accepted. "/s/ Thomas D. Conroy Dated December 20th, 1951." The following is an excerpt from the Minutes of a Special Meeting of the Board of Directors of Servomechanisms, Inc., held January 31, 1952, at Westbury, New York: "After discussion and upon motion duly made, the following preambles and resolution were duly and unanimously adopted: "Whereas, Thomas Conroy has heretofore rendered, over a period of more than two years, to the Corporation fiancial advisory services and financial services, including the introducing of the Corporation to Van Alstyne Noel Corporation, the Representative of the several Underwriters in the financing of its Common Stock; and "Whereas, *232 in the opinion of this Board (and this Board hereby so determines), such services are reasonably worth at least $34,000.00, "Now, Therefore, Be It "Resolved, that in consideration of such services so rendered by Thomas Conroy and in full payment therefor, this Corporation issue and deliver to Thomas Conroy 8,000 shares of its authorized but unissued Common Stock." Prior to February 1952 the capital stock of Servomechanisms, Inc. was not registered with the Securities and Exchange Commission. In the early part of 1952 Servomechanisms, Inc., filed with the Securities and Exchange Commission, Washington, D.C., a Registration Statement under the Securities Act of 1933, as amended, for the registration of 350,000 shares of its common stock of the par value of 20 cents per share. Servomechanisms, Inc. issued to petitioner, on or about February 9, 1952, 8,000 shares of its authorized but unissued common stock, 20 cents par value per share. The 8,000 shares were not a part of the 350,000 shares registered with the Securities Exchange Commission which were under written and to be marketed by Van Alstyne Noel & Co.
At the time of the issuance of the 8,000 shares of Servomechanisms *233 to petitioner the outstanding capital stock of Servomechanisms consisted of 750,000 shares of common stock, which included the 8,000 shares issued to petitioner and the 350,000 shares offered by the Prospectus of February 4, 1952. The public offering of the 350,000 shares of Servomechanisms, Inc. stock through Van Alstyne Noel & Co. and other underwriters was begun on or about February 4, 1952, and the public offering and sale of these shares was completed in approximately 3 or 4 weeks. The 350,000 shares were marketed through various underwriters who purchased the stock for $4.25 per share. The price to the public as set forth in the Prospectus was $5 per share. The following is an excerpt from the agreement between the various underwriters and the corporation as set forth in the Prospectus: "The Underwriters may offer all or part of the Common Stock to the public at the public offering price, and may offer part pursuant to Selling Agreements to dealers to be selected by the Representative, hereinafter called 'Selected Dealers', at such public offering price less a concession of 35 cents per share. The Underwriters and Selected Dealers may allow a concession from the public *234 offering price of not in excess of 10 cents per share to members of the National Association of Securities Dealers, Inc. After the initial public offering, the Representative may change the public offering price and the concessions or discounts." The following excerpt is from the Prospectus dated February 4, 1952, with respect to the public offering through underwriters of 350,000 shares of common stock of Servomechanisms, Inc.: "The Company has agreed to issue to Thomas Conroy 8,000 shares of Common Stock of the par value of 20" per share in consideration of financial advisory services heretofore rendered, including introducing the Company to Van Alstyne Noel Corporation, the Representative of the several Underwriters. The Company will value such shares as an expense item at the rate of $4.25 per share being the same price the Company is selling its shares offered hereby to the Underwriters. Mr. Conroy has assured the Company that he is taking these shares for investment and without any intent of publicly distributing the same. Mr. Conroy may be considered a 'finder' but the Company disclaims that he is an underwriter as that term is defined in the Securities Act of 1933, as amended. *235 " From February 6, 1952, through September 30, 1952, the "over the counter" bid and ask quotations on Servomechanisms, Inc. common stock ranged between 4 7/8 and 3 3/4 bid and between 5 1/2 and 4 5/8 asked. On February 7, 1952, the bid was 4 7/8 and the ask was 5 1/8. On September 30, 1952, the bid was 4 5/8 and the ask 5. At the time the 8,000 shares of Servomechanisms, Inc. were issued to petitioner they had a fair market value of $3.50 per share. (The Commissioner has conceded on brief that the fair market value of 800 of the 8,000 shares should be allowed petitioner as a deduction inasmuch as petitioner was obligated to and did turn over that number of shares to W. W. Schroeder as compensation for services rendered to petitioner in connection with the Servomechanisms' transaction.) Petitioner did not report the receipt of the shares as income on his 1952 return. Petitioner and his daughter Lucille inherited certain residence property share and share alike under the will of petitioner's wife who died on March 5, 1950. On October 4, 1950, petitioner deeded his interest in the property without consideration to Lucille. The purpose of the conveyance was to make it difficult *236 for possible judgment creditors of petitioner to reach the property. At the time the property was inherited it was subject to a mortgage indebtedness which was unsatisfied during 1952. In 1952 petitioner paid real estate taxes on the property in the amount of $530.54 and interest on the mortgage in the amount of $232.12. Of the amount paid as taxes $12.94 represents a penalty. On May 2, 1955, Lucille reconveyed to petitioner without consideration his original interest in the property. In connection with his business petitioner maintained an office during 1952. He also was employed on a salary basis by Servomechanisms, Inc. On his tax return for 1952 he reported salary received amounting to $6,837.88, and income tax withheld in the amount of $1,147.09. He also reported dividends received from Servomechanisms, Inc., in the total amount of $2,160. On his 1952 income tax return petitioner claimed the following deductions as business and traveling expenses: Carfare and telephone
$537.19
Automobile (Depreciation & Ex-
penses)
729.18
Bank Charges
9.13
Hotel Charges
69.75
Petitioner expended not more than $750 for business purposes in 1952. Petitioner did not *237 file a declaration of estimated tax for the year 1952. The Commissioner added $40,000 to petitioner's income as unreported compensation received from Servomechanisms, Inc. represented by the 8,000 shares of stock issued to petitioner in 1952. The Commissioner disallowed the items of interest and taxes paid set forth above claimed as deductions by petitioner and disallowed in toto the business and travel expenses claimed, as unsubstantiated. Opinion Petitioner concedes the principle "that income results from the receipt of property, as compensation" with this qualification, "unless it can be demonstrated that the value of such property is speculative and unascertainable." And the record before us, he says, "amply supports the speculative nature of the stock of Servomechanisms, Inc., issued to Petitioner, as well as the substantial nature of the limitation subject to which he received such stock", with the result that its value is rendered unascertainable. Granted that Servomechanisms was a comparatively new enterprise and that in February 1952, before the offering described in the prospectus, *238 its stock was privately held and that it was in need of current working capital, we can not agree that the stock issued to petitioner had no ascertainable fair market value. The fact is that the public offering was successful and 350,000 shares were publicly sold within a few weeks at the offered price of $5 per share. Further, there existed an over the counter market for the shares publicly marketed, at bid prices set forth in the findings of fact from February 6, 1952, at least till September 30, 1952, ranging from a low of 3 3/4 to a high of 4 7/8. This in itself precludes any finding that the stock of Servomechanisms, Inc. had no fair market value. Nevertheless, petitioner argues that the stock issued to him was different from the public stock in that it was subject to "a substantial and effective legal limitation" on its sale, i.e., petitioner's "assurance" that he was "taking these shares for investment" and that he had "no intention of publicly distributing the same", and that this limitation prevented petitioner's stock from having an ascertainable market value. A very similar argument *239 was rejected in Edith G. Goldwasser, 47 B.T.A. 445, affd. (C.A. 2) 142 Fed. (2d) 556, certiorari denied 323 U.S. 765. There the stock being valued was received by petitioner under an arrangement whereby petitioner was to make no public offering of the shares but was to hold them as an investment. The Court nonetheless determined the stock had value and in the course of the opinion said that while this provision did not constitute a restrictive covenant preventing petitioner from disposing of the stock if she had seen fit to do so, "we think it did have the effect of depressing the market for her particular shares." Petitioner argues that the Goldwasser case differs from the case before us. Here, he points out, there was a public offering in process of registration under the Securities Act of 1933 at the time petitioner received his shares, whereas, there was no such complicating feature in the Goldwasser case. This, petitioner contends, brought into play certain provisions of the Securities Act of 1933 (specifically portions of sections 2, 3, 4, 5, *240 12 and 24) which had the effect of preventing him from selling his shares at the time he received them. We will not attempt to set forth the details of petitioner's intricate argument with respect to the application of the Securities Act. It is sufficient to say we are not convinced that the cited provisions would have prevented petitioner from selling his shares. The most we can say is that they might have made it necessary for him to meet certain requirements preliminary to sale. Even so, there is no showing that these requirements could not have been met. Petitioner himself, professing extensive experience and familiarity with the Securities Act, testified he possibly could have sold his shares, though at a "tremendous discount" to one, two, or three purchasers after obtaining from them a "so-called investment letter covering all the facts." In petitioner's own opinion he could have sold his shares for "somewhere between a dollar and two dollars a share." No other opinion testimony was offered by either party. We reject petitioner's argument that his shares had no ascertainable fair market value at the time he received them and have found as a fact that they had a fair market *241 value of $3.50 per share. Complete rationalization of this value can not and, as we view it, need not be made. Edith G. Goldwasser, supra. In reaching this figure we have given consideration to all of the facts of record and applied to them our best judgment, including, among other things, information contained in the prospectus with respect to the public offering of Servomechanisms stock dated February 4, 1952, the earnings and dividend record included therein, the price at which the public offering of stock was made, the "bid and ask" over the counter quotations for the stock, the depressing effect of the assurance petitioner's stock would not be publicly sold might have had on the market, all of the facts surrounding the issuance of shares to petitioner, and the arguments pro and con with reference to the effect of the Securities Act made by the parties. This statement should be surplusage, for how else could a fact trier make a proper finding of fair market value? All it means is that we have exercised what we conceive to be our judicial function as best we know how with respect to the facts of record with the resulting valuation of $3.50 per share. With regard *242 to the claimed deductions for interest and taxes paid, the parties are agreed on the fact that petitioner made the payments and the amount thereof, but the Commissioner argues that petitioner was not paying his own obligations but those of his daughter and so is entitled to no deduction. On the facts we think the Commissioner is wrong. Petitioner and his daughter inherited the property from petitioner's deceased wife, share and share alike. This constituted them tenants in common. N.Y. Real Prop. Law, sec. 66 (McKinney). Petitioner did convey his interest to his daughter, but we think under the facts that he thereby retained his beneficial interest as a tenant in common, there being no intent that anything but bare legal title be passed by the conveyance. As a general rule, taxes are a lien on the land which both tenants in common are equally bound to discharge. The same would be true of a mortgage debt on the land. 2 Thompson, Real Property, secs. 1809, 1810. In paying the taxes and mortgage interest *243 petitioner was therefore in fact satisfying his own obligation and not that of his daughter. No question of whether he could enforce contribution from her is here involved. The mortgage interest and taxes paid by petitioner, exclusive of the tax penalty (which petitioner concedes is not deductible) are properly deductible. See F. C. Nicodemus, Jr., 26 B.T.A. 125; Archibald R. Watson, 42 B.T.A. 52, affd. on another issue, (C.A. 2) 124 Fed. (2d) 437. The issue respecting the amount of business and travel expenses properly deductible gives us little trouble. This is the typical case where such expenses are claimed on a return but when the time comes for proving that the expenditures were made and that they were of a character to be properly deductible, no documentary evidence at all is produced and we must be "satisfied", if satisfied at all, by the general testimony of the taxpayer himself that he made certain trips, incurred expenses, owned a car used not "over two percent on pleasure", all claimed expenses being of a business nature. The taxpayer testified he had kept records of such expenditures but was unable to produce them at the trial, *244 some of them being "at home some place". Applying the familiar rule of Cohan v. Commissioner, 39 Fed. (2d) 540, and bearing heavily against the taxpayer whose lack of records have placed him in his predicament we have found that not more than $750 of the claimed expenditures are properly deductible. Turning to the issue of the additions to tax for failure to file a 1952 declaration of estimated tax, petitioner acknowledges that such a declaration was required to be filed by him. He argues, however, that the Commissioner has erroneously computed the addition by basing it on the tax due after inclusion in income of an amount equal to the value of the stock which he received. His contention is that even if we find the stock had an ascertainable fair market value, yet petitioner had reason not to report any estimated income attributable to that value and hence the "penalty" should properly be computed without reference to such value. This argument has no merit. The addition to tax under section 294(d) (1) is based on certain percentages of the "correct tax". We do not see that the *245 "correct tax" is in any way affected by any items of income that the taxpayer might, even reasonably, have failed to include in his estimated income. Here he failed to file an estimate admittedly required by the statute to be filed. The amount of the addition will be computed under the Rule 50 computation in accord with the provisions of section 294(d)(1)(A), i.e., based on the amount and due date of each installment as if the declaration had been filed within the time prescribed showing an estimated tax equal to the "correct tax", etc. How the "correct tax" can be affected by amounts of income properly chargeable to petitioner but omitted by him because he might reasonably have thought they were not income is beyond us. Decision will be entered under Rule 50.